IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JERRY C. VALENTINE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-34-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

Martin R. Cohen
P.O. Box 1229
4040 Douglas Way
Lake Oswego, Oregon  97035

Linda S. Ziskin
3 Monroe Parkway, Suite P, PMB #323
Lake Oswego, Oregon  97035

Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Thomas M. Elsberry
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Jerry Valentine brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm

the decision of the Commissioner.

## BACKGROUND

Valentine filed an application for DIB on March 25, 2005, alleging disability beginning

March 30, 2004.  The application was denied initially and upon reconsideration.  After a timely

request for a hearing, Valentine, represented by counsel, appeared and testified before an

Administrative Law Judge ("ALJ") on March 9, 2006.[1]

On August 4, 2006, the ALJ issued a decision finding that Valentine was not disabled

within the meaning of the Act and therefore not entitled to benefits.  This decision became the

---

[1]The date is reported in the ALJ's decision.  The date on the transcript reads September 9,
2006.

Page 2 - OPINION AND ORDER

final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1998).  Substantial evidence is such relevant evidence as a reasonable person might accept as

adequate to support a conclusion.  It is more than a scintilla, but less than a preponderance, of the

evidence.  Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set

aside if the proper legal standards were not applied in weighing the evidence and in making the

decision.  Id.  The court must weigh both the evidence that supports and detracts from the

Commissioner's decision.  Id.  The trier of fact, and not the reviewing court, must resolve

conflicts in the evidence, and if the evidence can support either outcome, the court may not

substitute its judgment for that of the Commissioner.  Id. at 720-21.

## FACTS

I.    Valentine's History

Plaintiff was 59 years old at the time of the hearing.  He graduated from high school, and

has some college.  Plaintiff served in the Navy, and went to Vietnam from January through April

1969, until he suffered a head injury while in combat.  Plaintiff has a long work history.  His

most recent job was as a "parts man" for a diesel engine distributor; he worked for the company

from 1999 to 2004.  In March of 2004, having become fully vested in the company retirement

plan, he retired.

Plaintiff complains of posttraumatic stress disorder, cognitive disorder secondary sleep

deprivation, and degenerative joint disease of the right shoulder and left knee.  Plaintiff received

treatment for his PTSD from the Portland Veteran's Administration Medical Center from

September 19, 2000 through at least the date of the last hearing. Leslie Van Male, Ph.D., issued

three opinion letters on plaintiff's behalf, one in May of 2002, one in March of 2005, and one in

February of 2006.  In the letters, Dr. Van Male diagnosed plaintiff with PTSD and chronic sleep deprivation, opined that plaintiff's "ability to maintain gainful employment appears to be compromised," suggested that plaintiff was able to work "at considerable expense to your well-being," and that plaintiff is unemployable now due to his need to nap during the day to make up for interrupted sleep at night.  Tr. 520, 523, 566.  Dr. Van Male believed that plaintiff began to decline when he and his family had to make the decision to cut off life support for his brother, who had suffered a head injury in an accident.

In a 2002 evaluation of plaintiff's decreased concentration and functional decline, Daniel Storzbach, Ph.D. suggested that plaintiff "is less likely to have difficulty with highly routinized, overlearned tasks with low cognitive demand.  Instructions should be [as] brief as possible with frequent checks for completeness and accuracy of understanding.  The patient should always repeat instructions back to the speaker for corroboration and repetition learning."  Tr. 426.

Plaintiff consistently received positive reviews from his employer until his review in February of 2002.  His brother had died during the summer of 2000, and plaintiff had taken a medical leave of absence beginning in September of 2000.  He had run out of sick leave by October of 2001.  In his 2002 evaluation, his supervisor reported that plaintiff is a "knowledgeable journeyman who is currently working below his past performance standards.  Jerry's attitude has deteriorated.  He becomes irritated by normal daily circumstances. . . . It is imperative that Jerry returns to the performance level that he demonstrated in the past."  Tr. 191.  His supervisor rated him between acceptable and marginal on most criteria. His 2003 and 2004 evaluations were much improved.  His supervisor rated plaintiff between acceptable and commendable on all criteria in 2003, stating that plaintiff's "attitude has been outstanding, and he

has been a wonderful asset to our front counter. . . . I have seen a marked improvement in both

the quantity and quality of Jerry's work." Tr. 168.  In 2004, his supervisor rated him between

commendable and outstanding on all criteria, stating that he has been "very pleased with Jerry's

attitude and his willingness to help train our less experienced counter people."  Tr. 155.

Lane Anthony, plaintiff's supervisor at the time, later explained to the ALJ that the 2003

and 2004 evaluations were not honest, that plaintiff struggled

> to meet even minimum expectations at work.  He had trouble remembering even
> how to log into systems that he used every day.  He would nearly fall asleep
> standing up.  He had a hard time concentrating, and would 'space out' for long
> stretches of time.  His last evaluation that I did, I knew that Jerry was planning on
> leaving Cummins, so I was overly nice on his last review.

Tr. 300.

Plaintiff underwent arthroscopic surgery on his knee and shoulder in 2005.

On May 15, 2006, the VA increased plaintiff's disability rating from 70% to 100% due to

plaintiff's PTSD and moderate depressive disorder.

II.    The ALJ's Decision

The ALJ concluded that plaintiff's PTSD, cognitive disorder secondary to sleep

deprivation, and degenerative joint disease of the right shoulder and left knee were severe

impairments.  Nevertheless, she concluded that plaintiff could perform medium work.  She

opined that plaintiff is able to lift up to 50 pounds, sit at least six hours in an eight-hour day, is

able to stand six hours in an eight-hour day, and is able to perform postural activities at least two-

thirds of the day.  According to the ALJ, plaintiff has no environmental limitations.  The ALJ

concluded that plaintiff has moderate restrictions on his capacity to concentrate, interact with the

public, and carry out detailed work instructions.  She defined moderate to mean limited but satisfactory.

As a result, the ALJ believed plaintiff could not perform his past relevant work, but could work as a records clerk, inventory clerk, supply clerk and order filer, or as a warehouse worker and janitor.

## DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds.  Plaintiff suggests that the ALJ failed to consider all of his impairments in combination, including cervical and lumbar spine problems, and knee and shoulder injuries, in assessing plaintiff's functional limitations and in evaluating equivalence.  He asserts that the ALJ was biased.  He asserts that the ALJ improperly disregarded the opinions of Dr. Van Male, the lay witness testimony of his wife and previous supervisor, and his own statements about the extent of his sleep deprivation.  He also challenges the ALJ's rejection of the VA determination of plaintiff's disability as 100%.  Finally, he challenges the ALJ's acceptance of DDS reviewing psychologist's opinion, arguing that it is not consistent with the ALJ's conclusion that plaintiff can perform semi-skilled work, and that the ALJ constructed a less limited RFC than the DDS reviewing pscyhologist and Dr. Storzbach, recommended.

I.      Severity of Plaintiff's Impairments and Listing Determination

Plaintiff argues he has additional severe impairments that were not considered by the ALJ and that all of his impairments, when considered in combination, "may equal a listing at Step 3." Pl.'s Opening Brief at 24.  Plaintiff argues that the ALJ did not consider his cervical and lumbar spine problems, or his knee and shoulder injuries.

Page 8 - OPINION AND ORDER

Contrary to plaintiff's arguments, the ALJ concluded that plaintiff's knee and shoulder injuries were severe impairments, although she noted they were treated with surgery. The ALJ pointed out that after his shoulder surgery, plaintiff underwent a physical to maintain his Coast Guard marine operator's license, and the doctor did not identify any functional limitations. Similarly, no doctor identified any functional limitations due to plaintiff's knee. The ALJ's RFC accounted for weight-lifting limits, and sitting and standing limitations.

With regard to any cervical or lumbar spine problems, medical reports of such problems predate plaintiff's alleged onset date, and the record does not contain any diagnoses of any problems. There is no evidence in the record that these problems imposed any limitations on plaintiff's ability to work.

Finally, with regard to plaintiff's equivalence argument, plaintiff bears the burden of proving that he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff presents no theory about how his impairments are equal to any listing.

In sum, the ALJ did not err in leaving out any lumbar or cervical spine impairments from the RFC, adequately accounted for plaintiff's knee and shoulder impairments, and did not err in her listing determination.

II.    The ALJ's Bias

Plaintiff argues that the ALJ deprived him of due process because she had her mind made up about his lack of disability from the beginning. He claims she was fixated on plaintiff's retirement pension and VA benefits, and on his past employment activities.

ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification. . . . But expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display do not establish bias. Rather, [the claimant] was required to show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment.

Rollins v. Massanari, 261 F.3d 853, 857-58 (9th Cir. 2001) (citations and internal quotations omitted).

I have read the entire transcript from the hearing. The ALJ had done her homework and conducted the hearing appropriately. She confirmed with plaintiff's attorney that plaintiff's major problem was the PTSD, and not any physical limitations. Plaintiff's testimony verified this conclusion. In addition, there is no indication the ALJ focused improperly on plaintiff's retirement or VA benefits. I find no evidence that the ALJ's behavior was "so extreme" as to demonstrate that plaintiff did not obtain a "fair judgment."

III.    Medical Evidence

Plaintiff argues that Dr. Van Male's opinion was entitled to controlling weight.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in

the record.  Lester, 81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is

insufficient to constitute substantial evidence to reject the opinion of a treating or examining

physician.  Id. at 831.  Opinions of a nonexamining, testifying medical advisor may serve as

substantial evidence when they are supported by other evidence in the record and are consistent

with it.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

1999).

        The ALJ declined to give Dr. Van Male's opinion controlling weight for several reasons.

She felt Dr. Van Male was not objective in her approach to plaintiff, and inappropriately

advocated for disability benefits on his behalf.  The ALJ pointed out discrepancies in Dr. Van

Male's reports, noting that Dr. Van Male opined plaintiff was unemployable even though he

continued to work, and she assigned unjustified GAF scores of 38 and 41[2] when plaintiff was

employed, getting married, and working to pay off his debts.  The ALJ also noted inconsistencies

between Dr. Van Male's opinion letters and her chart notes–plaintiff reported improved

functioning at work, and supportive comments from his colleagues, but Dr. Van Male opined that

plaintiff "remained employed at considerable expense to [his] well-being."  Tr. 521.

        Because Dr. Van Male's opinion that plaintiff was incapable of work was not supported

by her own records, and because this is a valid reason to refuse to give controlling weight to a

_____

        [2]A GAF of 50 to 41 indicates, "Serious symptoms (e.g., suicidal ideation, severe
obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or
school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Assoc.,
Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text Revision 2000) (DSM-IV)
34.  A GAF of 40 to 31 indicates, "Some impairment in reality testing or communications (e.g.
speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as
work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids
friends, neglects family, and is unable to work; child frequently beats up younger children, is
defiant at home, and is failing at school)."  Id.

treating source opinion, the ALJ gave clear and convincing reasons for her decision. See 20

C.F.R. § 404.1527(d)(4), 416.927(d)(4) (factors to consider in weighing medical opinions

include consistency).

IV.    Credibility Determination

Plaintiff challenges the ALJ's finding that his impairments did not impose limitations to

the point of disability, arguing that the ALJ based her determination on factual inaccuracies.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom.

Smolen, 80 F.3d at 1281-82. The claimant is not required to produce objective medical evidence

of the symptom itself, the severity of the symptom, or the causal relationship between the

medically determinable impairment and the symptom. The claimant is also not required to show

that the impairment could reasonably be expected to cause the severity of the symptom, but only

to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the

second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony

regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the

ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and

convincing reasons for the rejection, including which testimony is not credible and what facts in

the record lead to that conclusion. Id. at 1284.

Plaintiff produced medical evidence of underlying impairments consistent with his

complaints and there is no evidence that he is malingering. Therefore, the ALJ must provide

Page 12 - OPINION AND ORDER

clear and convincing reasons for not fully crediting plaintiff's representations about his impairments.

The ALJ noted a number of discrepancies between plaintiff's testimony about his abilities and his actual activities. The ALJ properly considered plaintiff's work history during the relevant period. The ALJ pointed out that plaintiff retired after working for two years to obtain a stable retirement, and declined his employer's offer that he continue working with accommodations for his sleep deprivation. The ALJ accepted that his health was "better served" when he stopped working at a demanding job, but that does not mean plaintiff stopped working because he was unable to work any longer. The ALJ noted plaintiff enjoyed activities that were inconsistent with his allegations of exhaustion, such as target shooting, snow skiing, going to the gym, gardening, and household projects. These are relevant factors in deciding whether to accept plaintiff's complaints about the severity of his condition. See Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in yard, and occasionally care for friend's child is evidence of ability to work).

The ALJ gave clear and convincing reasons for not fully crediting plaintiff's testimony about his impairments.

V.      Lay Witness Testimony

Plaintiff challenges the ALJ's reasoning for not fully accepting his wife's testimony, and his former supervisor's explanation for giving plaintiff positive reviews in 2003 and 2004.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100

Page 13 - OPINION AND ORDER

F.3d 1462, 1467 (9th Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts

with medical evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Lane Anthony wrote a letter asserting that his 2003 and 2004 evaluations of plaintiff's

performance were not accurate.  The ALJ rejected Anthony's letter, finding that it was not

credible.  The supervisor had given plaintiff acceptable to commendable ratings in 2003 and

commendable to outstanding ratings in 2004.  The ALJ concluded that Anthony had a duty to his

employer to give accurate reviews, and that it would be "malfeasance and a betrayal of the

employer" to give commendable and outstanding marks when the employee barely met minimum

expectations.  The ALJ found that it was much more likely Anthony wrote the letter to advocate

for his friend's disability claim, now that he no longer supervises plaintiff.  The ALJ gave a

legitimate reason for rejecting Anthony's assertion that his written evaluations of plaintiff's

performance were inaccurate.

Plaintiff's wife testified that plaintiff's lack of sleep made it difficult for him to function,

he was agitated when he came home from work, and she had noticed an improvement now that

plaintiff had stopped working because he could nap during the day.  The ALJ explained that she

found plaintiff's wife's testimony generally credible, but unhelpful in that she could shed no light

on how well plaintiff coped with his sleep deprivation at work.  The ALJ also noted that

plaintiff's wife was not an uninterested party, and plaintiff's activity level and work history

undermined the wife's belief that plaintiff was unable to work.  Since the ALJ did not err in

concluding that plaintiff's testimony about his limitations was not fully credible, given his work

history and activities, her decision not to fully credit plaintiff's wife's testimony is supported by

substantial evidence.

Page 14 - OPINION AND ORDER

VI.    <u>VA Determination</u>

The VA increased its disability rating of plaintiff from 70% to 100% in May of 2006.

The ALJ rejected the VA finding, concluding that it was "non-critical," that it was not an

unemployability assessment and was not based on a "comprehensive evaluation of the

evidence."[3]  The VA determination was based on Dr. Van Male's and Carter's assessments, both

of which the ALJ rejected.

A VA disability rating is entitled to great evidentiary weight in a Social Security

proceeding.  <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002).  Since the VA and

SSA criteria for determining disability are not identical, an ALJ may give less weight to a VA

rating decision by giving persuasive, specific, and valid reasons for doing so that are supported

by the record.  <u>Id.</u>

Plaintiff asserts that the ALJ improperly rejected the VA decision because it was not an

"unemployability" assessment, and incorrectly suggested it was too different from the Social

Security criteria to be relevant.

The ALJ did note that the VA rating resembles the Social Security disability criteria, but

she incorrectly suggested it was not a reflection on unemployability.  In order to be awarded a

100% disability rating, the veteran must provide

> evidence of total occupational and social impairment, due to such symptoms as:
> gross impairment in thought processes or communication; persistent delusions or
> hallucinations; grossly inappropriate behavior; persistent danger of hurting self or

---

[3]Plaintiff reads the ALJ's opinion to mean she rejected the VA's determination because
the VA did not have the entire record.  Both the Commissioner and I read the ALJ's reason to be
that the VA did not evaluate the evidence in as comprehensive a manner as did the ALJ, which
would include the ALJ's conclusion that Dr. Van Male was operating as an advocate rather than
an evaluator.

Page 15 - OPINION AND ORDER

others; intermittent inability to perform activities of daily living (including
maintenance of minimal personal hygiene); disorientation to time or place;
memory loss for names of close relatives, own occupation, or own name.

Tr. 307.  If these criteria are met, the veteran is clearly unemployable, thus mooting any need to

make a separate unemployability decision.

However, in addition to her criticism that the VA disability rating was not a conclusion

on unemployability, the ALJ noted that the VA disability determination was not based on a

comprehensive review of the evidence.  The VA based its decision on the assessments of Dr.

Carter and Dr. Van Male.  Plaintiff is not challenging the ALJ's decision to give little weight to

Dr. Carter's assessment, and I have already concluded that the ALJ made no error in giving little

weight to Dr. Van Male's assessment.  Accordingly, I find the ALJ gave persuasive, specific and

valid reasons for rejecting the VA's disability rating, and these reasons are supported by the

record.

VII.    Residual Functional Capacity

Plaintiff challenges the ALJ's RFC, arguing that the ALJ did not include the limitations

identified by the DDS reviewing psychologist Peter LeBray, and the limitations identified by Dr.

Storzbach.  Dr. LeBray initially opined that plaintiff could perform "simple, paced (unrushed)

tasks/routines without close public interaction."  Tr. 123.  He later concluded that plaintiff

suffered moderate limitations in his ability to carry out instructions, maintain attention, and

interact with the public.  Dr. Storzbach opined that plaintiff should be given "highly routinized,

overlearned tasks with low cognitive demand.  Instructions should be [as] brief as possible with

frequent checks for completeness and accuracy of understanding.  The patient should always

repeat instructions back to the speaker for corroboration and repetition learning."  Tr. 426.

Page 16 - OPINION AND ORDER

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  The vocational expert's opinion about a claimant's residual functional capacity has no value if the assumptions in the hypothetical are not supported by medical evidence in the record.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).

The ALJ concluded that plaintiff could perform medium work.  The ALJ found that plaintiff has moderate restrictions on his capacity to concentrate, interact with the public, and carry out detailed work instructions.  She defined moderate to mean limited but satisfactory.  As a result, she concluded plaintiff could work as a records clerk, inventory clerk, supply clerk and order filer, or as a warehouse worker and janitor.

The ALJ properly accounted for Dr. LeBray's final assessment that plaintiff was moderately limited in carrying out instructions, concentrating, and interacting with the public. Dr. LeBray found no significant limitations in plaintiff's understanding and memory.  The vocational expert testified that the records clerk and inventory clerk jobs were "pretty much repetitive, routine type work."  Tr. 643.  Accordingly, the ALJ's conclusion that plaintiff could perform this type of work, even with his limitations on concentration and following detailed work instructions, is supported by substantial evidence in the record.

Dr. Storzbach did not offer an opinion that plaintiff was disabled.  Rather, he determined that plaintiff could compensate for his limitations, and gave him some suggestions for successfully doing so.  Dr. Storzbach's opinion that plaintiff could perform "highly routinized, overlearned tasks with low cognitive demand" is consistent with the VE's characterization of the work as repetitive and routine.  Furthermore, when the ALJ identified plaintiff's moderate

impairment in following detailed instructions he accounted for Dr. Storzbach's opinion that

plaintiff needed brief instructions.  Accordingly, the ALJ's RFC and opinion about the kind of

work plaintiff could perform in the national economy, is supported by substantial evidence in the

record.

### CONCLUSION

The decision of the Commissioner is affirmed.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____3rd_____ day of March, 2008.

           _/s/ Garr M. King_____
           Garr M. King
           United States District Judge